UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**ARTHUR GAINES (#390883)**

**VERSUS**

**DARREL VANNOY, ET AL.**

CIVIL ACTION

NO. 17-448-BAJ-RLB

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 15, 2019.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ARTHUR GAINES (#390883)

VERSUS

DARREL VANNOY, ET AL.

CIVIL ACTION

NO. 17-448-BAJ-RLB

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This matter is before the Court on the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner, Arthur Gaines, challenges his conviction, entered in 2010 in the Twenty-Third Judicial District Court for the Parish of Ascension, State of Louisiana, on one count of second degree murder. The petitioner contends that he received ineffective assistance of trial counsel due to counsel's failure to (1) move to suppress evidence obtained via an invalid warrant; (2) move to suppress evidence obtained via a warrant obtained by way of an affidavit containing false, misleading, inaccurate, and omitted information; and (3) investigate, interview, and obtain a statement from Carl M. Bell.

**Factual Background**

The facts, as accurately summarized in the decision of the Louisiana First Circuit Court of Appeal (*see State v. Gaines*, 10-1762 (La. App. 1 Cir. 2/25/11), 2011 WL 1107155), are as follows: Willie Diggs, III, (Diggs) lived in a trailer near the home of his eighty-year-old father, Willie Diggs, Jr., (the victim), in Donaldsonville, Louisiana. On February 25, 2008, Diggs became concerned when he went to his father's home, knocked on the door, and did not receive a response, although his father's car was parked next to the house. After finding the front door locked, he obtained a screwdriver and pried open the carport door. Upon entering the house, he

discovered the bloodied, lifeless body of his father lying on the floor. Diggs went to a neighbor's house and asked for help, stating that his father appeared to have been shot.

The neighbor placed a call to the Ascension Parish Sheriff's Office (APSO). Once at the scene, officers discovered the victim's body lying on his back in the living room, with multiple stab wounds. It appeared that a struggle had occurred in the living room. Additionally, several other rooms of the house had been ransacked as though someone was searching for something. It also appeared that someone had rummaged through the interior of the victim's car, which was parked in the carport. Detective Gerald Whealton found $8,600.00 in cash located in a day planner in the trunk of the vehicle. An autopsy subsequently determined that the victim had been stabbed nine times in his abdomen and chest and had six superficial cuts on his body, as well as a defensive wound to his right hand so deep that it severed muscles and tendons. The cause of death was the stab wound that perforated the victim's heart.

As a result of the police investigation, the petitioner and several other individuals were identified as suspects. Warrants were secured and DNA samples were obtained from the suspects and other individuals. The DNA samples and a small piece of latex that appeared to be part of a latex glove caught in the victim's belt buckle were submitted by police to the Louisiana State Police Crime lab for analysis.

According to the expert witness from the crime lab, the results indicated there was a mixture of the DNA of at least two contributors on the piece of latex, the profiles of whom were consistent with those of the victim and the petitioner. The State expert indicated that the DNA profile obtained from the piece of latex was 32.9 million times more likely to be a mixture of DNA from the victim and the petitioner than a mixture from the victim and a randomly selected individual. The results further indicated the DNA samples submitted by APSO from other

individuals, including the victim's son, Willie Diggs, III, were not consistent with the DNA profile obtained from the piece of latex, so those individuals were excluded as possible contributors. The defense also presented the testimony of a DNA expert at trial. Although the defense expert did not disagree with the conclusion that the victim and the petitioner's DNA profiles were consistent with the DNA mixture obtained from the piece of latex, he felt the sample actually contained the DNA of several additional contributors, which he indicated would change the statistics cited by the State expert.

  Upon receiving the DNA results, the police arrested the petitioner. After being advised of his *Miranda* rights and signing a waiver form, he was questioned by APSO Detective Chris Moody concerning the victim's death. The petitioner initially denied any involvement, but after he was informed of the DNA results, he eventually gave a statement as follows: In the early morning hours of February 25, 2008, Henry Knockum approached him and asked him to participate in a "hustle" of the victim's house by acting as a lookout; Detective Moody indicated he understood "hustle" to mean a burglary of the victim's house. The petitioner put on a pair of latex gloves and gave a pair to Knockum. They then walked to the victim's house, which was located about fifty to sixty yards away, with Knockum walking ahead of the petitioner. At one point, Knockum met up with a black male who the petitioner did not know. The petitioner lost sight of the two men walking ahead of him, but continued toward the victim's house. He then saw lights go on inside the house. As he walked up to the corner where the house was located, he heard a "rumble" from inside. He walked up to the front door, which apparently was open, and saw Knockum fighting with the victim in the living room. They both ended up on the floor. At this point, the petitioner saw Knockum either stabbing or hitting the victim. As the victim

was yelling at Knockum to get off of him, the unknown black male ran from the back of the house, hit the front door, causing it to partially shut, and kicked the victim in the head.

The petitioner stated that he became scared and ran to his house located nearby. He claimed he returned to the victim's house after approximately ten or fifteen minutes to check on the victim. According to his statement, he entered the house and checked the petitioner for a pulse, putting his hands on the victim's chest, shaking him and moving his body in order to see if he was alive. He indicated he was still wearing his latex gloves at this time, but could not remember whether he tore them. The petitioner then left the house, closing the door behind him.

Roy Maurer, who is currently a federal inmate in Texas, also testified at trial on behalf of the State. He testified that he was incarcerated at the Ascension Parish Jail at the same time as the petitioner in 2009. According to Maurer, he was approached by another inmate to help the petitioner prepare a motion to suppress the latex glove found at the crime scene with the petitioner's DNA on it. He testified that when he asked the petitioner what his defense would be, the petitioner indicated there were several possible scenarios to explain the DNA. One was that he gave the glove to another guy. Another was that he went into the house with his accomplice, but left before the murder occurred. Still another scenario mentioned by the petitioner was that he was standing outside, heard a loud noise and went inside, then left again.

Maurer testified that he initiated contact with the District Attorney and wrote him several letters regarding the possibility of testifying in this case, because he felt it was the right thing to do. However, he acknowledged that, although no one made any promises whatsoever to him, he hoped to receive a diminution of his federal sentence in exchange for testifying truthfully in this matter. Finally, there was testimony at trial that Knockum also was arrested for the victim's death, and gave a statement confessing to killing the victim but the DNA results indicated that

Knockum was excluded as a possible contributor to the DNA mixture obtained on the piece of latex.

## Procedural History

After a trial by jury conducted in June of 2010, the petitioner was found guilty of second degree murder, and on June 28, 2010 the petitioner was sentenced to life imprisonment at hard labor without benefit of probation or suspension of sentence with credit for time served. The petitioner thereafter appealed his conviction and asserted a single claim of insufficiency of the evidence. On March 25, 2011, the petitioner's conviction and sentence were affirmed by the Louisiana Court of Appeal for the First Circuit. *See State v. Gaines* 10-1752 (La. App. 1 Cir. 3/25/11), 2011 WL 1107155. The petitioner's application for supervisory review in the Louisiana Supreme Court was denied on October 14, 2011. *See State v. Gaines*, 11-0851 (La. 10/14/11), 74 So.3d 218.

On or about May 18, 2012, the petitioner filed an application for post-conviction relief in the state district court, asserting that his trial counsel was ineffective for failing to file a motion to suppress. Pursuant to an Order dated July 25, 2013, the petitioner's application was denied in the trial court. The petitioner's requests for review of the denial of his application for post-conviction relief, were denied on February 27, 2014 and January 9, 2015, respectively. *See State v. Gaines,* 13-1598 (La. App. 1 Cir. 2/27/14), unpublished, and *State ex. rel. Gaines v. State,* 14-0582 (La. 1/9/15), 157 So.3d 590.

On or about June 15, 2015, the petitioner filed a second application for post-conviction relief, asserting that his counsel was ineffective for failing to investigate, interview, and obtain a statement from Carl Bell. On August 3, 2015, the petitioner's application was denied by the trial court. The petitioner's requests for review of the denial of his application for post-conviction

relief were denied on December 7, 2015 and May 12, 2017, respectively. *See State v. Gaines,* 15-1474 (La. App. 1 Cir. 12/7/15), unpublished, and *State ex. rel. Gaines v. State,* 16-0066 (La. 5/12/17), 219 So.3d 323.

On or about July 17, 2017, the petitioner filed the instant application for habeas corpus relief in this Court. The state asserts that the petitioner's claims are without merit.

## Standard of Review

The standard of review in this Court is that set forth in 28 U.S.C. § 2254(d). Pursuant to that statute, an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Relief is authorized if a state court has arrived at a conclusion contrary to that reached by the Supreme Court on a question of law or if the state court has decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

Relief is also available if the state court has identified the correct legal principle but has unreasonably applied that principle to the facts of the petitioner's case or has reached a decision based on an unreasonable factual determination. *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000). Mere error by the state court or mere disagreement on the part of this Court with the state court determination is not enough; the standard is one of objective reasonableness. *Id*. *See also Williams v. Taylor*, *supra*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly

established federal law was objectively unreasonable"). State court determinations of underlying factual issues are presumed to be correct, and the petitioner has the burden to rebut that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## Substantive Review

### *Claims (1) and (2): Ineffective Assistance of Counsel – Defective Warrant*

In Claims (1) and (2), the petitioner asserts that his trial counsel was ineffective for failing to move to suppress the search warrant which was based on uncorroborated hearsay from an unknown and unreliable source, and due to the false, misleading, inaccurate and omitted information in the affidavit used to obtain the search warrant.

A habeas petitioner who asserts that he was provided with ineffective assistance of counsel must affirmatively demonstrate (1) that his counsel's performance was "deficient", *i.e.*, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment; and (2) that the deficient performance prejudiced his defense, *i.e.*, that counsel's errors were so serious as to deprive the petitioner of a fair trial, a trial in which the result is reliable. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The petitioner must make both showings in order to obtain habeas relief based upon the alleged ineffective assistance of counsel. *Id*.

To satisfy the deficiency prong of the *Strickland* standard, the petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. *See, e.g., Martin v. McCotter*, 796 F.2d 813, 816 (5th Cir. 1986). The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy. *See,* e.g., *Bridge*

*v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988).  This Court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial.  *Martin v. McCotter*, *supra*, 796 F.2d at 817.  Great deference is given to counsel's exercise of professional judgment.  *Bridge v. Lynaugh*, *supra*, 838 F.2d at 773; *Martin v. McCotter*, *supra*, 796 F.2d at 816.

If the petitioner satisfies the first prong of the *Strickland* test, his petition nonetheless must affirmatively demonstrate prejudice resulting from the alleged errors.  *Earvin v. Lynaugh*, 860 F.2d 623, 627 (5th Cir. 1988).  To satisfy the prejudice prong of the *Strickland* test, it is not sufficient for the petitioner to show that the alleged errors had some conceivable effect on the outcome of the proceeding.  *Strickland v. Washington*, *supra*, 466 U.S. at 693.  Rather, the petitioner must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.  *Martin v. McCotter*, *supra*, 796 F.2d at 816.  The habeas petitioner need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome."  *Id*. at 816-17.  Both the *Strickland* standard for ineffective assistance of counsel and the standard for federal habeas review of state court decisions under 28 U.S.C. § 2254(d)(1) are highly deferential, and when the two apply in tandem, the review by federal courts is "doubly deferential."  *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

The above showing is one that the petitioner cannot make in the instant case.  In this circuit, courts apply a two-part analysis when a party challenges a seizure pursuant to a search warrant.  *United States v. Allen,* 625 F.3d 830, 835 (5th Cir. 2010).  The Court must first determine whether the seizure falls within the good-faith exception to the exclusionary rule.  *Id*.

That "inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *United States v. Leon*, 468 U.S. 897, 922 n.23 (1984). If the exception does not apply, the Court proceeds to the second step to determine whether the magistrate issuing the warrant had a substantial basis for believing there was probable cause for the search. *Allen,* 625 F.3d at 835.

The good-faith exception to the exclusionary rule does not apply if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth. *Leon*, 468 U.S. at 923, *citing*, *Franks v. Delaware*, 438 U.S. 154 (1978). In the instant matter, the petitioner alleges that the officer who presented the search warrant affidavit in this case knew or should have known the information therein was false.

A review of Detective Chris Hagan's Primary Arrest Narrative does not reveal any indication that the detective intentionally presented false information in the search warrant affidavit. All statements made by Detective Hagan in his affidavit, while not verbatim copies of those included in his Narrative, are supported by his interviews with various witnesses as documented in his Narrative. *See* R. Doc. 1-3, p. 16-26.

The exception also does not apply in cases where the issuing magistrate wholly abandoned his judicial role. *Id*. The petitioner does not rely on that circumstance.

The petitioner does appear to assert that the good-faith exception should not apply because of the third situation identified in *Leon*, *i.e.*, the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.*, *quoting*,

*Brown v. Illinois*, 422 U.S. 590, 610–611 (1976). This is often referred to as a "bare bones" affidavit. *See e.g., United States v. Guerrero*, 500 F.App'x. 263, 264 (5th Cir. 2012).

A "bare bones" affidavit is one that contains wholly conclusional statements about an affiant's knowledge and beliefs. *United States v. Kleinkauf*, 487 F.App'x. 836, 838 (5th Cir. 2012). "Generally, examples of 'bare bones' affidavits include those that merely state that the affiant 'has cause to suspect and does believe' or '[has] received reliable information from a credible person and [does] believe' that contraband is located on the premises." *United States v. Pope*, 467 F.3d 912, 920 (5th Cir. 2006).

The affidavit of Detective Hagen is not "bare bones." He explains that he obtained the information from a witness who was familiar with the petitioner, who had spoken to the petitioner days prior to the murder, and had also been a recent recipient, on one occasion, of the petitioner's knife wielding violent tendencies while smoking crack. Based on the witness' knowledge of the petitioner and his interactions with the petitioner, the witness strongly believed that the petitioner planned to burglarize the home of the victim. Although not identified by name in the affidavit, it is clear that the affiant knew the identity of the witness and personally interviewed him. It was not an anonymous or unknown source as asserted by the petitioner.

The petitioner also complains of the reliability of that witness, Carl Bell, whom most of the information included in the search warrant affidavit was obtained. In *Illinois v. Gates*, 462 U.S. 213, 230 (1983), the Supreme Court abrogated the approach established in *Spinelli v. United States*, 393 U.S. 410 (1969) which required that proof of an informant's "veracity," "reliability" and "basis of knowledge" as a separate and independent requirement to be rigidly applied in every case. Instead, courts are to apply the totality-of-the-circumstances analysis, i.e., the issuing magistrate is simply to make a practical, common-sense decision whether, given all

the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Gates*, 462 U.S. at 238. The affidavit herein, when viewed under the totality of circumstances, is not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923.

The final circumstance which could preclude application of the good faith exception exists when the warrant so fails to particularize the place to be searched or the things to be seized that the executing officers cannot reasonably presume it to be valid. *Leon*, 468 U.S. at 923. The Fourth Amendment states unambiguously that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The plaintiff does not claim that warrant was not sufficiently particularized.

As such, no basis existed for not applying the *Leon* good faith exception to the exclusionary rule. For these reasons discussed above, it is not reasonably probable that had a motion to suppress been filed, it would have been granted. Accordingly, the petitioner's counsel did not err in failing to file a motion to suppress. For the same reason, the petitioner cannot establish prejudice from his counsel's failure to file a motion to suppress, and the petitioner's claim of ineffective assistance of counsel is without merit.

**Claim (3): Failure to Investigate, Interview and Obtain a Statement from Carl Bell**

The petitioner asserts that his trial counsel was ineffective for failing to investigate, and interview Carl Bell. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 691. "A defendant who alleges a failure to investigate on the part of his counsel must allege with

specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green,* 882 F.2d 999, 1003 (5th Cir. 1989).

In support of this claim, the petitioner attaches an affidavit from Carl Bell, executed in 2015, wherein Bell denies making the statements Detective Hagen attributed to him in his Narrative and in the affidavit submitted in support of the request for a search warrant.[1] *See* R. Doc. 1-3, p. 27-28. The plaintiff asserts that if his trial counsel had interviewed Bell, he would have obtained the same information related in Bell's affidavit, and he could have used that information to support a police fabrication defense and to bolster the petitioner's claim of actual innocence.

The plaintiff essentially argues that following an investigation, Bell should have been called to testify at the trial to undermine the prosecution's case. To prevail on an ineffective assistance claim based upon uncalled witnesses, an applicant must name the witness, demonstrate that the witness would have testified, set out the content of the witness' proposed testimony, and show that the testimony would have been favorable. *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). Claims of uncalled witnesses are disfavored, however, especially if the claim is unsupported by evidence indicating the witness' willingness to testify and the substance of the proposed testimony. *See Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007). In the instant matter, Bell does not state in his affidavit that he was available and willing to testify at the trial of this matter, or at a hearing on a motion to suppress. As such, the plaintiff cannot prevail on this claim. In addition, other testimony was consistent with Bell's

---

[1] In Claim 1, the petitioner attacks the credibility of Carl Bell referring to him as a "confessed crack-addict/drunk" and implies that Bell made certain statements to Detective Hagen because Bell was also a suspect. Now, in Claim 3, the plaintiff asks the Court to accept that Bell is truthful and reliable simply because, years later, he signed a statement before a notary. Essentially, the plaintiff argues in Claim 1 that Bell did make certain statements to Detective Hagen, but in Claim 3 argues contradictorily that the plaintiff did not actually make the statements.

statements to police. Any testimony Bell could have offered refuting his attributed statements that could be considered in support of a claim of actual innocence would have been contradicted by the DNA evidence as well as the statements by the defendant.

## Certificate of Appealability

Should the petitioner pursue an appeal, a certificate of appealability should also be denied. An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although the petitioner has not yet filed a Notice of Appeal herein, the Court may address whether she would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).

In cases where the Court has rejected a petitioner's constitutional claims on substantive grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005), *quoting Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In the instant case, the Court finds that reasonable jurists would not debate the denial of petitioner's application or the correctness of the substantive ruling. Accordingly, it is appropriate that, in the event that the petitioner seeks to pursue an appeal in this case, a certificate of appealability should be denied.

## **RECOMMENDATION**

It is recommended that the petitioner's application for habeas corpus relief be denied, and that this proceeding be dismissed. It is further recommended that in the event the petitioner pursues an appeal in this case, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on March 15, 2019.

**RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE**